**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> Kyle Wayne Welsh, ) <br><br> Defendant. ) | No.  CR-21-00316-PHX-SPL <br><br> **ORDER** |

On October 18, 2022, Magistrate Judge Deborah M. Fine ordered that Defendant Kyle Wayne Welsh be detained pending trial as a danger to the community and as a flight risk. (Doc. 16). On January 17, 2023, Defendant filed an Appeal from Magistrate Judge's Order of Detention. (Doc. 33). On February 13, 2023, this Court held a hearing on the Appeal. Having carefully considered the parties' arguments—both those in their briefing and those made at the hearing—the Court now denies the Appeal and affirms the detention order.

## I.    TIMELINESS

A defendant has the right to seek review of a magistrate judge's detention order pursuant to 18 U.S.C. § 3145(b). But "[t]hat right is waived if a party fails to appeal within 14 days." *United States v. Adams*, No. CR-22-00893-TUC-JCH (BGM), 2022 WL 14813734, at *2 (D. Ariz. Oct. 26, 2022) (citing Fed. R. Crim. P. 59; *United States v. Tooze*, 236 F.R.D. 442, 445–46 (D. Ariz. 2006)). Thus, when more than 14 days have passed since a magistrate judge's detention order, a district judge's decision to review the

order is discretionary. *Id.* Here, Defendant's appeal of the detention order was filed almost three months after it was entered, so it is within this Court's discretion to deny the appeal on that basis alone. The Court will nevertheless exercise its discretion to review the appeal.

## II.   DETENTION APPEAL

### A. Legal Standard

"[F]ederal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (citations omitted). Thus, "[o]nly in rare circumstances should release be denied" and any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* (citations omitted). When reviewing a magistrate judge's detention order, "the district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Court may not give any deference to the magistrate's ultimate conclusion. *Id.* (citations omitted). The Bail Reform Act of 1984 (the "Act") requires that a defendant facing trial be released under the least restrictive conditions that will reasonably assure his appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B). "[T]he government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

Section 3142(g) provides the factors "that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community." *Id.* (citing 18 U.S.C. § 3142(g)). The factors are: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). "Of these factors, the weight of the

evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121 (citations omitted). Otherwise, "[t]he weight to be accorded to each of these factors rests in the Court's discretion." *United States v. Gentry*, 455 F. Supp. 3d 1018, 1020 (D. Ariz. 2006) (citation omitted).

### B. Analysis

Here, the Court finds that the Government has met its burden and has sufficiently demonstrated that Defendant should be detained. Having fully considered the relevant factors, the Court concludes that no condition or combination of conditions would reasonably assure Defendant's appearance as required or the safety of the community.

First, the nature and circumstances of the offense charged against Defendant demonstrates both Defendant's flight risk and danger to the community. Defendant is charged with one count of assault with a dangerous weapon. If convicted, Defendant faces a sentence of up to ten years in prison, which gives Defendant an incentive to flee. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). More importantly, Defendant is accused specifically of ramming his quad-cab dually pickup truck backwards into a police patrol vehicle as the officer inside attempted a stop. The incident began when the officer, a Colorado River Indian Tribes ("CRIT") police officer who is identified as the victim in this case, responded to an argument in a parking lot between Defendant and a panhandler. The panhandler reported to 911 that Defendant threatened to run over his dog and damage his vehicle. When the officer arrived at the scene, Defendant admits that he yelled profanities at the officer, and the Government alleges that Defendant refused to exit his vehicle, instead speeding away from the area. The officer pursued Defendant in his patrol car. Defendant stopped his vehicle in the middle of Highway 95, and as the officer was parking behind him, Defendant allegedly reversed his truck into the patrol car, pushing the patrol car back several yards and causing extensive damage. The officer got out of his patrol car and approached Defendant's truck. Defendant allegedly refused to exit his vehicle, so the officer attempted to open Defendant's driver's-side door, but Defendant pulled it shut and locked it. The officer

unsuccessfully attempted to break the driver's side window with the butt of his service weapon. About 30 seconds later, Defendant allegedly fled the scene in his vehicle. The officer fired three shots in the direction of the truck, and CRIT police called off their pursuit of Defendant.

The circumstances of the alleged offense show a hostility to law enforcement. Defendant is alleged to have crashed into a police cruiser and fled from police twice. Not only does this present a flight risk but it also demonstrates a danger to the community that is inherent in an unwillingness to cooperate with law enforcement. If Defendant were to abscond, any attempt to apprehend him may pose a danger to officers and the surrounding community. *See United States v. Garretson*, No. 2:13-CR-29 JCM (GWF), 2013 WL 1405731, at *3 (D. Nev. Apr. 5, 2013) (finding a defendant's anti-law enforcement disposition made him a danger to the community). Accordingly, the nature and circumstances of the alleged offense weigh strongly in favor of detention.

Next, the weight of the evidence against Defendant—the least important consideration in the analysis—weighs slightly in the Government's favor. A gas station security camera captured Defendant's truck ramming the patrol car. In addition, Defendant's initial interaction with the officer was recorded by the officer's body camera, and bystanders filmed the events that followed the vehicle collision. On the other hand, Defendant asserts that black box data from the patrol car supports his case. Ultimately, the Court gives minimal weight to this factor.

Third, Defendant's history and characteristics strongly favor detention. The Court is cognizant that Plaintiff is a college graduate with no prior convictions and no history of substance abuse or mental health treatment, but other considerations support the Court's finding. Initially, Pretrial Services has had great difficulty obtaining and verifying information from Defendant about his history and characteristics. Defendant first declined an interview with Pretrial Services in the District of Nevada, where he was arrested, but because he asserts that he did so on the advice of his then-counsel, the Court takes no consideration of that instance of noncooperation. (Doc. 33 at 2). Still, Defendant

was interviewed by Pretrial Services in this District on October 11, 2022. In that interview, he provided an address that was later determined to be his business address, located on the CRIT reservation in Parker, Arizona. (Doc. 11 at 1). He reported that he and his mother both reside in Arizona and that he has always lived in Arizona. (Doc. 11 at 2). At his detention hearing before Judge Fine, Defendant reported for the first time a residential address on the CRIT reservation. (Doc. 27 at 18). Then, in the instant Appeal, Defendant asserted for the first time that he has been residing with his mother in Texas since the death of his sister, contrary to his prior representations to Pretrial Services. (Doc. 33 at 6). Indeed, at the Hearing before this Court, Defendant's mother—who had previously declined to answer questions from Pretrial Services—testified that Defendant has resided with her in Weatherford, Texas from February 2021 until his arrest in October 2022. The fact that Defendant misled Pretrial Services about where he was living is a strong indication of a flight risk. *See United States v. Dunson*, No. 2:13-CR-060-APG-GWF, 2013 WL 1934944, at *3 (D. Nev. May 8, 2013).

Further, when he was arrested in this matter on October 3, 2022, there was also an active warrant for Defendant issued on February 18, 2021 in CRIT Tribal Court. After posting a $7,000 bond in that case, he failed to appear. (Doc. 15 at 3; Doc. 34 at 3–4). Although Defendant asserts his sister had recently passed away so he was tending to her arrangements and his grief, that does not explain his 19-month absence. (Doc. 33 at 6). Moreover, the timing of the issuance of the warrant coincides with Defendant's move to Texas. This reinforces Defendant's flight risk, which the Government has proven by a preponderance of the evidence.

Finally, as discussed above, Defendant poses a risk to law enforcement and the public if released. Defendant asserts that Defendant's conflict with law enforcement is limited to the CRIT police. (Doc. 33 at 7). It is not surprising, however, that a person's police encounters would occur exclusively with the police force where he has lived for the bulk of his adult life, nor does it suggest that he does not pose a threat elsewhere. Based on the nature of the alleged offense and Defendant's hostility to law enforcement,

the Government has shown by clear and convincing evidence that Defendant poses a danger to the community if released.

The remaining question, then, is whether there is any set of conditions that could reasonably assure Defendant's appearance and the safety of the community. The Court finds there is not. Defendant has already shown disobedience of release conditions in CRIT Tribal Court by absconding despite having posted a $7,000 bond. Defendant's mother expressed a willingness to serve as a third-party custodian, but her testimony to this Court also demonstrated a distrust of law enforcement, and she previously declined to answer questions from Pretrial Services, even after Defendant was represented by new counsel in this District. Further, Defendant's mother testified that if he were to reside with her on her ranch, Defendant would have access to his own transportation and may travel to other locations in Texas to assist with ranch operations—potentially providing opportunities to flee. Finally, conditions such as electronic monitoring, required contact with Pretrial Services, curfews, travel restrictions, drug testing, and treatment programs are all conditions that are effective only insofar as Defendant complies in good faith with them. *See United States v. Hir*, 517 F.3d 1081, 1092–93 (9th Cir. 2008). For the reasons discussed above—namely, Defendant's alleged and demonstrated history of disobedience with release conditions and noncooperation with law enforcement and Pretrial Services— the Court concludes that the risk Defendant would not comply is unacceptably high. *See id.* at 1093. The Court finds that no set of conditions could reasonably mitigate the substantial flight risk and danger to the community that Defendant poses. Accordingly,

**IT IS ORDERED** that Defendant's Appeal from Magistrate Judge's Order of Detention (Doc. 33) is **denied** and the detention order is **affirmed**.

Dated this 14th day of February, 2023.

Honorable Steven P. Logan
United States District Judge